Application of Angelo CHIEPPA, Plaintiff,

v.

Alex KRIMSKY, Warden of Federal House of Detention, Defendant, to quash and vacate a warrant of arrest, etc.

United States District Court
S. D. New York.
Jan. 8, 1959.

Louis Bender, New York City, for plaintiff.

Arthur H. Christy, U. S. Atty., S. D. New York, New York City, for the United States. Donald H. Shaw, Asst. U. S. Atty., New York City, of counsel.

HERLANDS, District Judge.

Petitioner has moved for an order (1) quashing a warrant issued by the United States Board of Parole, (2) releasing petitioner from the Federal House of Detention, (3) setting bail pending determination of the instant motion, and (4)

for such further relief as may be deemed proper.

This matter of first impression involves the interpretation of a parole statute, title 18 U.S.C.A. § 4164.

To be decided is the following basic question: Does the 180-day period made deductible from the maximum term by the statute for certain purposes apply not only to a conditional releasee, i.e., a person who has been released after serving his prison term less good-time deductions, but also to a person (like the petitioner) who has been paroled after serving one-third of his sentence, i.e., as distinguished from having been released after serving his term less good-time deductions.

The distinction between a "conditional releasee" and a "parolee" is the fulcrum of this controversy because the statute (18 U.S.C.A. § 4164) *literally* read applies—and this is admitted by petitioner —only to a conditional releasee, that is, "a prisoner having served his term or terms less good-time deductions." The parties differ as to whether the statute should be interpreted literally.

The present application must be viewed against the background of the following prior proceedings affecting the petitioner.

On October 16, 1950, Honorable Philip Forman, United States District Judge for the District of New Jersey, sentenced petitioner to a term of three years' imprisonment in two cases involving violation of the Internal Revenue Liquor Laws.[1]

On December 8, 1951, after serving 13 months, petitioner was released on parole for the remainder of his term which was to expire 23 months later on October 15, 1953. Petitioner was not re-leased for "good-time" while in prison, but was paroled in the discretion of the Parole Board.

On August 18, 1953, petitioner was again arrested for conspiracy to violate the liquor laws. On October 9, 1953, a warrant was issued by the Parole Board charging a violation of parole.

On September 13, 1956, petitioner was sentenced after trial before Honorable Alexander Holtzoff, United States District Judge, then sitting by designation in the Southern District of New York. A term of two years' imprisonment was imposed. In a presentence report made available to Judge Holtzoff upon sentence, Judge Holtzoff was advised that petitioner might be required by the Parole Board to serve twenty-two and one-half months over and above the sentence to be imposed. This Court has read the said presentence report.

On June 11, 1957, conviction having been affirmed by the United States Court of Appeals for the Second Circuit (United States v. Chieppa, 241 F.2d 635), petitioner commenced serving the sentence imposed by Judge Holtzoff.

On December 3, 1958, petitioner became eligible for mandatory release from prison for "good-time." On that date, the warrant previously issued (on October 9, 1953) by the Parole Board, charging violation of parole, was executed and lodged with the Warden, Federal House of Detention.

Petitioner is presently incarcerated by virtue of this warrant. He seeks by the present motion to test the legality of his incarceration and to quash said warrant. Thus, two questions are raised: first, the propriety of the issuance of the warrant; second, the propriety of the delay in executing the warrant.

---

1. This was not petitioner's first conviction for bootlegging, but was his fourth in ten years. In 1940, he was given a sentence of 1 year and a day, which was suspended, and a 5-year probation imposed. While on probation, in 1941, he was again arrested for conspiracy, given an opportunity to enter the United States Army in lieu of prosecution, but was rejected. In 1946, petitioner was sent to the Federal Penitentiary in Atlanta for 3 years for the same type offense. In 1945, petitioner, still in prison, received a one to two year state sentence to run concurrently with the Atlanta incarceration for bootlegging.

## I.

■■ For the reasons hereinafter set forth, the Court has concluded that the warrant was properly issued.

Petitioner was paroled from prison on December 8, 1951, after serving thirteen months of the three-year term imposed by Judge Forman. Petitioner's release was pursuant to the provisions of Title 18 U.S.C.A. § 4202, and in the discretion of the Parole Board. Section 4202 provides:

"§ 4202. *Prisoners eligible*

"A Federal prisoner, other than a juvenile delinquent or a committed youth offender, wherever confined and serving a definite term or terms of over one hundred and eighty days, *whose record shows that he has observed the rules of the institution* in which he is confined, *may be released on parole after serving one-third of such term* or terms or after serving fifteen years of a life sentence or of a sentence of over forty-five years. As amended July 31, 1951, c. 277, 65 Stat. 150." (Emphasis supplied.)

Parole pursuant to Section 4202 is governed by Section 4203, which provides:

" § 4203. *Application and release; terms and conditions*

" (a) If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.

"*Such parolee* shall be allowed in the discretion of the Board, to return to his home, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled persons, as the Board shall prescribe, and to *remain, while on parole, in the legal custody und un-der the control of the Attorney General, until the expiration of the maximum term or terms for which he was sentenced. * * *"* (Emphasis supplied.)

When the above sections are applied to the facts at bar, it is clear that petitioner's parole expired on October 15, 1953, i.e., the date of "expiration of the maximum term * * * for which he was sentenced." The parole-violator warrant under attack was issued on October 9, 1953. It was, therefore, issued six days within the proper period.

Petitioner argues that, when the warrant was issued on October 9, 1953, it was issued too late; and that it should have been issued at least one hundred and eighty days prior to October 15, 1953 (the expiration of the maximum term), i.e., before April 15, 1953. The basis for this argument is that a broad construction should be placed upon Section 4164, which provides:

" § 4164. *Released prisoner as parolee*

"A prisoner having served his term or terms less good-time deductions, shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days. * * *"

Contrary to petitioner's argument, Section 4164 pertains only to mandatory releases for "good-time," pursuant to the terms of Sections 4161 and 4162 which declare:

" § 4161. *Computation generally*

"*Each prisoner* convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, *whose record of conduct shows that he has faithfully observed all the rules* and has not been subjected to punishment, *shall be entitled to a deduction* from the term of his sentence beginning with the day on which the sentence commenc-

es to run, to be credited as earned and computed monthly as follows:

\*   \*   \*   \*   \*   \*

"Six days for each month, if the sentence is more than one year and less than three years. \* \* \*"

" § 4162. *Industrial good time*

"*A prisoner may*, in the discretion of the Attorney General, *be allowed a deduction* from his sentence of not to exceed three days *for each month of actual employment* in an industry or camp for the first year or any part thereof, and not to exceed five days for each month of any succeeding year or part thereof.

"In the discretion of the Attorney General *such allowance may also be made to a prisoner performing exceptionally meritorious service* or performing duties of outstanding importance in connection with institutional operations.

"Such allowance shall be in addition to commutation of time for good conduct, and under the same terms and conditions and without regard to length of sentence." (Emphasis supplied.)

Section 4164 is inapplicable to petitioner because his release in 1951 was not for "good-time." Inasmuch as petitioner was paroled, Section 4203—rather than Section 4164—is applicable. There is no persuasive support for petitioner's argument that his parole expired one hundred and eighty days prior to October 15, 1953, the terminal date of his maximum sentence.

Chapter 309 of Title 18 is entitled "Good Time Allowances," whereas Chapter 311 of Title 18 is entitled "Parole." Although these two chapters are to be read together as parts of an integrated statute, they deal with two distinct situations and procedures.

The mandatory provision for deductions from the term of sentence known as "Good Time Allowances" appears in 18 U.S.C.A. § 4161, which is part of Chapter 309.

This allowance may be characterized as a "commutation of time for good conduct" (18 U.S.C.A. § 4162) and results mandatorily in the prisoner's being "released at the expiration of his term of sentence less the time deducted for good conduct" (18 U.S.C.A. § 4163). Section 4164, the principal provision involved in the pending application, is part of Chapter 309. It relevantly provides, as already noted, that a prisoner who has served his term of sentence "less good time deductions" shall, upon release, be "deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." In terms of their results, the foregoing provisions may be paraphrased as follows: where a prisoner is mandatorily given time-credit for good conduct (1) his sentence is commuted to that extent; (2) he is released at the expiration of his term of sentence less the good time so credited to him; (3) but his release is conditional in the sense that he is "deemed as if released on parole"; and (4) the terminal date of such quasi-parole is the maximum term for which he was originally sentenced less one hundred and eighty days.

In contrast to the foregoing *mantory* but conditional release after good time allowances, are the provisions for *discretionary* "parole" under Chapter 311 (sections 4201–4207). Section 4202 relevantly provides that a prisoner "may be released on parole after serving one third" of his term. Where a prisoner is released on parole under section 4204, the terminal date of such parole is defined by Section 4203(a) in the following words:

" [t]o remain, while on parole, in the legal custody and under the control of the Attorney General, *until the expiration of the maximum term or terms for which he was sentenced.*" (Emphasis supplied.)

Conspicuously omitted from the quoted portion of section 4203(a) is the phrase "less one hundred and eighty

days"—a phrase which does appear in section 4164 and which is applicable to conditional releasees under section 4164.

The omission cannot be attributed to Congressional oversight. Section 4164, as originally enacted, and section 4203 (a) were both parts of the Act of June 25, 1948, chapter 645. However, by the Act of June 29, 1951, section 4164 was amended by the addition of the phrase "less one hundred and eighty days," whereas section 4203(a) was not so amended. See 1951 United States Code Cong. and Adm. Service, p. 1544.

Had Congress intended to amend section 4203(a) in the same respect, it could easily have done so. In fact, section 4203 does contain a time-deductibility provision with regard to parolees, but that provision is explicitly limited to prisoners "sentenced before June 29, 1932" [18 U.S.C.A. § 4203(b)].

Petitioner concededly was not released for "good-time"; he was released in the discretion of the parole board. Hence, the longer supervisory period (prescribed by Section 4203) is applicable.

Petitioner argues that the shorter period of Section 4164 should apply to a prisoner (such as petitioner) paroled under Section 4202, as well as a prisoner released under the mandatory provisions of Sections 4161 and 4162 for "good-time"; and that a distinction should not be made between the two classes because those released for "good-time" under Sections 4161 and 4162 are "greater risks" than those paroled under Section 4202.

The Court cannot brush aside the ineluctable difference that the statute makes between a prisoner released after good conduct allowance (sections 4161, 4162) and a prisoner released after serving one-third of his sentence (section 4202).

Moreover, the legislative history of the 1951 amendment (Act of June 29, 1951, c. 176, 65 Stat. 98)—by which the words "less one hundred and eighty days" were added to Section 4164—demonstrates most persuasively that Congress was

dealing with certain problems of administration and penology as they related specifically to prisoners who have served their sentence, less good-time deductions. United States Code Congressional and Administrative Service (82nd Cong., 1st Sess.1951), vol. 2, pp. 1544–1547, Senate Report No. 385 and Letter of Department of Justice.

■■ It is not the function of the courts to inquire into the wisdom of legislation that clearly articulates the Congressional purpose of achieving certain administrative and penological reforms. In the present case the distinction made between the two classes of prisoners is manifestly logical. Those released under Section 4202 are returned to society as the result of a discretionary decision by the Parole Board. Their release at an earlier date than those released mandatorily under Sections 4161 and 4162 makes it reasonable to require them to remain under supervision for the full term of their imprisonment, as provided for in Section 4203. On the other hand, mandatory releases generally occur later during the term of imprisonment than paroles. For reasons of economy and also because effective parole supervision requires considerable time and supervision for short periods is generally ineffective, it is logical to have created a one hundred and eighty day grace period with respect to mandatory releases only. See United States Code Congressional and Administrative Service, supra.

Petitioner's second contention revolves about Section 4205, which provides:

"§ 4205. *Retaking parole violator under warrant; time to serve undiminished*

"*A warrant for the retaking* of any United States prisoner who has violated his parole, *may be issued* only by the Board of Parole or a member thereof and *within the maximum term or terms for which he was sentenced.* The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the

Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve." (Emphasis supplied.)

Petitioner argues that a legislative intent to provide a one hundred and eighty day suspension of supervision in the case of both mandatory releasees and parolees may be gathered from Section 4205, which provides that parole violation warrants may be *issued* within the maximum term imposed. Petitioner's argument is without merit. The section relates only to the permissible time of the warrant's *issuance* where a prisoner "has violated his parole." By the plain meaning of Section 4164, this period is shorter with respect to mandatory releases than with respect to parolees. In either case, the warrant may be issued within the maximum term, although in the case of mandatory releases, the act of violation must occur before one hundred and eighty days of the date sentence is to expire.

In any event, Section 4205 in no way indicates that the period of supervision of mandatory releases and parolees is the same. By its precise language, warrants may be issued "within the maximum term." In addition, the fact that supervision of mandatory releasees terminates one hundred and eighty days prior to the maximum term does not indicate that supervision of parolees, an entirely distinct class, terminates prior to the maximum term.

Petitioner's contentions are expressly contrary to the plain meaning of Section 4203. That section unambiguously states that prisoners released under Section 4202 shall be under parole supervision "until the expiration of the maximum term."

## II.

■ The Court also concludes that the warrant was properly executed. There is no merit to petitioner's argument that it was improper to defer execution of the warrant until expiration of the term imposed by Judge Holtzoff.

The power to defer execution is well-settled. It has in fact been held that a direction that a new sentence be served concurrently with the unexpired portion of a previous sentence as to which there has been a violation of parole, is beyond the jurisdiction of the Court. Zerbst v. Kidwell, 1938, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399; United States ex rel. Quinn v. Hunter, 7 Cir., 1947, 162 F.2d 644, 648; Tippitt v. Squier, 9 Cir., 1944, 145 F.2d 211, 213; Tippitt v. Wood, 78 U.S.App.D.C. 332, 1944, 140 F.2d 689; Hammerer v. Huff, 1939, 71 App.D.C. 246, 110 F.2d 113, 115–116.

In Kidwell, prisoners were paroled before completing sentences in Federal prisons. Before expiration of their parole, they committed second Federal offenses for which they served sentences. At the expiration of their second term, the Parole Board required them to serve the unexpired portion of the first sentences. The District Court, 19 F.Supp. 475, released the prisoners on writs of habeas corpus, which were affirmed by the Court of Appeals for the Fifth Circuit, 92 F.2d 756. The United States Supreme Court reversed, holding that the Parole Board may require prisoners to serve unexpired portions of previous sentences after expiration of subsequent sentences.

The Court states (304 U.S. at pages 361–363, 58 S.Ct. at page 873):

"When respondent committed a federal crime while on parole, for which he was arrested, convicted, sentenced, and imprisoned, not only was his parole violated, but service of his original sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were 'analogous to those of an escaped convict.' Not only had he— by his own conduct—forfeited the privileges granted him by parole, but, since he was no longer in either actual or constructive custody under his first sentence, service under the

second sentence can not be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system.

"The Parole Board, and its members have been granted sole authority to issue a warrant for the arrest and return to custody of a prisoner who violates his parole. A member of the Board ordered that respondent be taken into custody *after* completion of the second sentence. Until completion of the second sentence —and before the warrant was served—respondent was imprisoned only by virtue of the second sentence. There is, therefore, no question as to concurrent service of sentences, unless—as respondent contends— section 723c required that the unexpired part of respondent's first sentence begin when he was imprisoned under the second sentence. That section provides:

"'* * * The Board of Parole * * * or any member thereof, shall have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve.'

"Obviously, this provision does not require that a parole violator's original, unexpired sentence shall begin to run from the date he is imprisoned for a new and separate offense. It can only refer to reimprisonment on the original sentence under order of the Parole Board.

* * * * * *

"'* * * Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offence committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified. If the parole laws should be construed as respondent contends, parole might be more reluctantly granted, contrary to the broad humane purpose of Congress to grant relief from imprisonment to deserving prisoners." (Emphasis in original.)

This approach is logical. If the execution of the warrant may not be deferred, prisoners could be incarcerated during pre-trial stages where the violation of parole constituted a separate offense, and could thus argue that they were being hindered in preparing for trial under the new charge. In addition, if the execution of the warrant may not be deferred, since a parole violator is entitled to a hearing, a pre-trial disclosure of the Government's case on the new charge would result.

■ Petitioner's remaining contention—that it was improper to defer execution via a letter annexed to the warrant—is spurious. The power to defer necessarily creates the power to give implementing instructions to defer. It is an emphasis of form over substance to argue that the warrant itself must call for its delayed execution, and that an accompanying letter is insufficient.

The petition is denied in all respects.