**UNITED STATES of America, Appellant,**

v.

**Ernest James COX and Ella Doris Roberts, Appellees.**

Nos. 72–2212, 72–2472.

United States Court of Appeals, Ninth Circuit.

March 12, 1973.

Ronald Bain (argued), David C. Marcus, Los Angeles, Cal., for appellees.

William D. Keller, U. S. Atty., Jan Lawrence Handzlik, Eric A. Nobles, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Before MERRILL and CHOY, Circuit Judges, and ENRIGHT,* District Judge.

ENRIGHT, District Judge:

On February 16, 1972, a two count indictment was returned charging defendants Ernest James Cox and Ella Doris Roberts with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute narcotics. Before trial, a motion to suppress was made and argued; the district court granted the motion. A timely notice of appeal was filed by the government. While appeal was pending the indictment was dismissed over the objection of the United States. The government now appeals that dismissal as well as the granting of the motion.

## THE FACTS

Defendant Cox had previously been confined for a federal violation; he was paroled in January, 1969. While on parole he became involved in further difficulties with State authorities. Charges against him were either filed or considered. A federal parole officer, hearing of these charges and believing that Mr. Cox's parole time had not fully expired, ordered issuance of a parole warrant on January 6, 1972. But in transmitting

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

the warrant to the United States Marshal, the parole officer appended a form letter setting forth various standard directions to the Marshal applicable in federal parole violations. In the instant letter of instruction, one of the paragraphs was marked:

Please hold Warrant in abeyance. If pending charge results in no-conviction, advise Board for further instructions. However, should subject change plea to guilty or be found guilty, place a detainer and assume custody if and when released.

The warrant and instruction letter were received by the United States Marshal's office in Los Angeles on January 10, 1972. That day, the supervising deputy of the warrant section noted receipt in his office's warrant register.

The key fact in this case is that in his handling of the warrant, the officer did not heed the critical paragraph of the instruction letter but, rather than properly placing the letter within the files annexed to the warrant, improperly assigned the warrant to other deputies for execution.

These marshals maintained possession of the warrant until January 25, 1972. On that date, upon their transfer within the Marshal's office, they turned over possession of their warrants to Deputy Marshal Vilt. He carried it within his briefcase until February 7, 1972 while he worked on other warrants.

On February 7, 1972, Vilt and his partner requested and gained the cooperation of the Los Angeles Police Department to effectuate the arrest. While approaching the residence, they saw the motions of shadows and heard movement. An observer was posted at the rear of the structure. The marshals then announced their presence and purpose. Mr. Cox opened the door; the marshals entered and placed him under arrest.

As one of the marshals entered, he observed Ms. Roberts running from the living room through the dining room, brown paper bag in hand. He followed her to the bathroom where she had locked herself. Through the keyhole he saw her dispose of the bag through the window. Ms. Roberts was then apprehended and returned to the living room; there the police officers had assembled other individuals [1] present. The bag was confiscated and was found to contain narcotics.

Subsequently, the marshals obtained a search warrant for the residence. A thorough search revealed a large quantity of narcotics.

Prior to the arrests of the individuals present, Mr. Cox had been arrested for a parole violation during 1971. Mr. Cox filed a petition for writ of habeas corpus, contending that the Bureau of Prisons had not properly credited him with 629 days on his sentence. On January 31, 1972, District Judge Curtis granted the relief requested, and judgment was entered on February 18, 1972. The practical effect of his ruling is that Mr. Cox's original sentence terminated on September 15, 1971.

## INVALIDITY OF THE WARRANT

■ The government correctly states that a parole warrant issued while a man is on parole may be executed after the original term has expired. Cox v. Feldkamp, 438 F.2d 1, 3 (5th Cir. 1971); Williams v. United States Board of Paroles, 428 F.2d 1210 (5th Cir. 1970); Melton v. Taylor, 276 F.2d 913 (10th Cir. 1960); Schiffman v. Wilkinson, 216 F.2d 589, 591 (9th Cir. 1954), cert. denied, 348 U.S. 916, 75 S.Ct. 299, 99 L.Ed. 719 (1955).

---

1. Another individual, Manuel H. Ramirez, was present at the residence at the same time, allegedly to buy narcotics from appellee Cox. He was arrested and later indicted and eventually tried in March, 1972. During the course of the Ramirez trial, the court granted a motion to suppress certain evidence on the basis of the unlawful execution of the parole warrant for the arrest of Cox, and a mistrial was granted. The government appealed the granting of the motion, only to later dismiss its appeal.

Thus, the government would have us hold that even if it were conceded that Mr. Cox was discharged from parole as of January 31, 1972, the date the habeas corpus relief was granted (*i.e.*, before the search of the premises), rather than on February 18, 1972, the date of formal judgment (*i.e.*, after the search), nevertheless the validity of the previously issued warrant was not affected.

Appellees, on the other hand, argue that Mr. Cox's parole status ended on September 15, 1971, notwithstanding that this determination was not made until January or February, 1972. Thus, appellees argue that the parole warrant, not having been issued within the maximum term of the original sentence, is necessarily invalid. 18 U.S.C. § 4205. We need not decide this issue for different reasons dictate the conclusion that the warrant was indeed invalid.

The crux of this instant case is what the government would term the discovery of the evidence through serendipity by marshals acting properly in the good faith performance of their duties. We cannot agree.

The government cites Agnew v. City of Compton, 239 F.2d 226, 231 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S. Ct. 868, 1 L.Ed.2d 910 (1957) for the proposition that "[n]o one has a constitutional right to be free from a law officer's honest misunderstanding of the law or facts in making an arrest." But that statement arose in a civil rights action and centered about the necessity of establishing an intent to discriminate or deprive one of a federal right. Here, however, the issue is not civil damages but whether a violation of the fourth amendment requires suppression. Hence, *Agnew* offers the government nothing of merit.

The United States also relies upon Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) and United States v. Baca, 444 F.2d 1292 (10th Cir. 1971) to establish that when officers act in good faith and in so doing make a reasonable mistake, their

misunderstanding is excused to the extent that the search is held nonviolative. *Abel* and *Baca* were, however, both premised on specific findings of the respective district courts, that the agents had not acted in bad faith and that the warrant had in the regular course of events been issued in good faith. The district court here made no such finding. Rather, Judge Williams stated:

> I understand further that the warrant, together with that appended note, came to the possession of the United States Marshal and that either accidentally or on purpose the marshal sought to execute or serve that warrant on or about February 7th, despite the admonition of the parole officer to hold the warrant in abeyance;

Reporter's Transcript p. 51.

 The government also calls this court's attention to Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The Supreme Court there upheld a warrantless search incident to a warrantless arrest of a *wrong man*. Again, though, *Hill* was based upon reasonable, good faith belief. *Id.* at 802, 91 S.Ct. 1106. But good faith notwithstanding, *Hill* may be distinguished, for *Hill* concerns mistaken identity rather than an invalid warrant. More analogous to the instant situation is Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) in which the court held an arrest to be invalid because the warrant was deficient despite the good faith of the arresting officers. Thus, in good faith officers can search without warrant a wrong man incident to a warrantless arrest, yet in good faith officers cannot arrest the right man if the warrant be invalid. This is not an anomaly. Law enforcement agents must take suspects as they find them; verbal descriptions and even photographs are not foolproof. Common sense dictates that officers must utilize such imperfect information to their best ability. The determination of the validity of the instant warrant is not similarly hampered. Appellees cite this court to Chieppa v.

Krimsky, 169 F.Supp. 337 (S.D.N.Y. 1959). There petitioner argued that it was improper to defer execution of a warrant via an annexed letter; the district court found his argument spurious. "The power to defer necessarily creates the power to give implementing instructions to defer. It is an emphasis of form over substance to argue that the warrant itself must call for its delayed execution, and that an accompanying letter is insufficient." *Id.* at 344. Thus, we would hold that an accompanying letter of instruction directing the officers to hold a warrant in abeyance has the same effect as if the direction had been included on the face of the warrant. Thus, the warrant being invalid, the arrest is invalid, absent of course any independent reason for an arrest.[2]

The government, nevertheless, contends that even if the warrant was defective and hence the marshals were unlawfully present, evidence of another, different crime discovered on the premises is admissible. The government relies upon United States v. Bacall, 443 F. 2d 1050 (9th Cir. 1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971), and on United States v. Williams, 436 F.2d 1166 (9th Cir. 1970). Its reliance is misplaced. *Bacall* pertained to an involved investigation in which the illegal activity resulted in information—considered to be de minimis in comparison with the mass of other legitimate information—that led to the evidence sought to be suppressed. *Williams* involved officers gaining information from neighbors in a quest merely to find "animal sitters" after an illegal arrest and search. Here the primary illegality was the actual entrance of the marshals: what they immediately saw was neither de minimis or so attenuated by an unrelated sequence of events as to be purged under the doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Having concluded that the taint of the primary illegality was not purged, it is unnecessary to determine whether probable cause existed to invade the privacy of the bathroom, the decision to do so being founded merely upon the rapid movement of Ms. Roberts, paper bag in hand.

## DISMISSAL OF THE INDICTMENT

During the pendency of the appeal on the suppression issue, the defendants moved for dismissal of the indictment. The government resisted and relied upon 18 U.S.C. § 3731 which provides, in part: "Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 [general release provisions] of this title." The trial judge, nevertheless, granted dismissal, concerned as he was with the aspects of the guarantee of speedy trial within the sixth amendment. We are mindful of United States v. Mitchell, 425 F.2d 1353 (8th Cir. 1970), cert. denied, 400 U.S. 853, 91 S. Ct. 85, 27 L.Ed.2d 90 (1970), but, given the circumstances of this case, we do not feel the district court erred.

The orders of the district court are, therefore, affirmed.

2. Thus, if the arresting officer himself originally had ample probable cause to arrest, the invalidity of the warrant would not be fatal to the government's cause.

*E. g.,* Ray v. United States, 412 F.2d 1052, 1053 (9th Cir. 1969). Here, however, the marshals had no reason, save the warrant, to invade the residence at the outset.