**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Bernard WALKER, Defendant-
Appellant.**

**No. 73–2243.**

United States Court of Appeals,
Ninth Circuit.

Jan. 16, 1974.

Certiorari Denied May 13, 1974.
See 94 S.Ct. 2399.

---

James F. Hewitt, Federal Public Defender, William A. Brockett, Jr., Asst. Federal Public Defender (argued), San Francisco, Cal., for defendant-appellant.

James L. Browning, Jr., U. S. Atty., Lawrence Callaghan, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before ELY and WRIGHT, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant was convicted of uttering a forged United States Treasury check in

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

violation of 18 U.S.C. § 495. His conviction was based in large part upon the testimony of Charles Griffin, a twice convicted felon, who had entered a plea of guilty to uttering the same check. Appellant contends that (1) the district court erroneously denied his request for discovery of Griffin's probation report, which might contain statements by Griffin inconsistent with his trial testimony; (2) the preliminary hearing was a sham due to limitations placed upon defense counsel's cross-examination; and (3) the court failed to *voir dire* prospective jurors for possible prejudice against a black defendant.

### Failure to Produce Probation Report of Co-Defendant

■ Through a subpoena duces tecum served upon the probation officer, appellant sought production of Griffin's probation records, contending that discovery was required under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), where the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

The court ordered the probation officer to review Griffin's "entire records" to determine whether there was any material which might exonerate or tend to exonerate appellant.[1] The parties agree that the probation officer reported informally to the court that there was no exonerating evidence. The court denied appellant's request that the records be examined also for potential impeachment material as an overbroad interpretation of Brady v. Maryland.

■ Brady v. Maryland involved evidence withheld by the prosecution.[2] Here appellant sought discovery of a presentence report prepared by the probation officer for the court's use in sentencing a co-defendant and witness for the Government. A probation officer is not subject to the control of the prosecutor;[3] nor are his reports to the court public records. It is well settled that "the right to examine a presentence report is not one of constitutional magnitude and that the trial judge, in his discretion, may deny an accused an opportunity to inspect the report". Fernandez v. Meier, 432 F.2d 426, 427 (9 Cir. 1970); Federal Rules of Criminal Procedure, Rule 32(c)(2). In oral argument counsel for appellant recognized the confidential nature of probation reports, but argued that this could have been preserved by an *in camera* inspection by the court. While the trial judge might properly have made the inspection himself, it was not an abuse of discretion to rely upon an examination by the probation officer.[4]

### Preliminary Hearing

■■ "The return of an indictment establishes probable cause, and eliminates the need for a preliminary examination." Austin v. United States, 408 F.2d 808, 810 (9 Cir. 1969).[5] Subsequent to appellant's preliminary hearing he was indicted for the same offenses for which the hearing was held. He was not entitled to a second preliminary examination. Any alleged defects in the initial hearing were cured by the subsequent indictment.[6]

---

1. Appellant's counsel stated that he would "trust" the probation officer's judgment "as to whether anything exonerates or not".

2. Appellant here "does not claim that the prosecution has deliberately suppressed exculpatory evidence".

3. Probation officers are appointed by the district courts and serve under the direction of the courts and the Administrative Office of the United States Courts. 18 U.S.C. §§ 3654 and 3656.

4. The court stated that if the probation officer found any exonerating material, the court would review the record himself.

5. See also Bayless v. United States, 381 F.2d 67, 71 (9 Cir. 1967).

6. We recognize that it was held in Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967) that an intervening indictment did not bar a defendant's right to a second preliminary hearing, where there had been undue restrictions of defendant's right to sub-

### Voir Dire of Prospective Jurors

Relying upon Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L. Ed. 1054 (1931) and Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L. Ed.2d 46 (1973), appellant complains of the court's failure to submit on *voir dire* two questions requested by appellant and designed to ascertain whether any of the jurors might be prejudiced against appellant because he was black. *Aldridge* and *Ham* are distinguishable. In *Aldridge* a black man was charged with the murder of a white policeman. All the jurors were white. Recognizing that the trial court has "a broad discretion as to the questions to be asked", the Court held that the exercise of this discretion is "subject to the essential demands of fairness" and that under the circumstances of that case the court erred in failing to permit counsel to ask questions relative to "racial prejudice". 283 U.S. at 310–311, 51 S.Ct. at 471. *Ham* involved the prosecution of a black civil rights leader for possession of drugs. "His basic defense at the trial was that law enforcement officers were 'out to get him' because of his civil rights activities, and that he had been framed on the drug charge." 409 U.S. at 525, 93 S.Ct. at 849. Following *Aldridge* the Court again recognized "the traditionally broad discretion accorded to the trial judge in conducting *voir dire*", 409 U.S. at 528, 93 S.Ct. at 851, but held that under the facts shown by the record the jurors should have been interrogated on "the issue of racial bias". *Id.* at 527, 93 S.Ct. 848.[7]

 In this case there were no racial overtones or any showing of prejudice. The Government's two chief witnesses and three of the jurors were black. While it would have been the better practice to submit the requested questions, we cannot say that there was an abuse of discretion in failing to do so under the circumstances of this case, particularly in view of the fact that no objection was made to the court's failure to ask the questions.

Affirmed.

poena witnesses at the first hearing. As was noted in Sciortino v. Zampano, 385 F.2d 132, 134 (2 Cir. 1967), cert. denied, 390 U. S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968), "the views of the District of Columbia [in *Ross* have] not found favor in any other circuit * * *". See also statements of Judges Danaher, Burger and Tamm on petition to grant rehearing en banc in *Ross*, 380 F.2d at 566–569.

7. The limited application of *Aldridge* and *Ham* to special circumstances involving racial prejudice was recognized in Commonwealth v. Ross, 282 N.E.2d 70 (Mass.1972), remanded for reconsideration in light of

Ham v. South Carolina; Ross v. Commonwealth, 410 U.S. 901, 93 S.Ct. 968, 35 L.Ed. 2d 265 (1973), aff'd, 296 N.E.2d 810 (Mass. 1973), cert. denied with three Justices dissenting, 414 U.S. 1080, 94 S.Ct. 599, 38 L. Ed.2d 486 (1973). *Ross* involved black defendants and a white victim. On remand the sole question was whether "defendant's conviction should be reversed on the ground that the trial judge refused to ask the veniremen whether they were racially prejudiced." 296 N.E.2d at 811. Distinguishing *Ham*, the court affirmed the conviction, holding that "there was nothing that pointed to Ross as a special target for racial prejudice." *Id.* at 816.