**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Bernard JOSEPH, Defendant-Appellee.**

No. 86–1395.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1987.

Decided Sept. 30, 1987.
As Amended Dec. 14, 1987.

Alan Hechtkopf, Washington, D.C., for plaintiff-appellant.

Richard A. Wright, Las Vegas, Nev., for defendant-appellee.

Before CHOY and TANG, Circuit Judges, and STEPHENS,[*] Senior District Judge.

STEPHENS, District Judge:

In 1982 the Nevada State Board of Dental Examiners ("Dental Board") discovered that Bernard Joseph was practicing dentistry in Las Vegas without a license. In January of 1983 Joseph was held in contempt of the Dental Board and fined for violating a permanent injunction issued in 1961 which prohibited him from practicing dentistry without a license. The Dental Board also contacted the Clark County District Attorney's office about the Joseph case, and the DA's office initiated a criminal investigation to determine if Joseph had violated the applicable state statutes. In August of 1982 the DA's office obtained a valid search warrant to search Joseph's office. Pursuant to this warrant, the authorities seized Joseph's business records. These criminal proceedings culminated in Joseph's plea of guilty to the crime of practicing dentistry without a license. The case was concluded and closed on June 22, 1983.

After the conclusion of the state criminal case, Joseph's business records were retained by Deputy DA Michael Amador. He suspected that the records contained evidence of federal tax violations. He made arrangements with Dental Board attorney Jeffrey Clontz to turn the records over to the Dental Board so that the Dental Board

[*] Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

could refer the matter to the IRS. On July 20, 1983 Clontz took possession of the records and stored them in his office.

On September 27, 1983 one of Joseph's attorneys telephoned Amador and requested the return of the records. Amador told him that he was not sure if he had any of the records but would check his files and call him back. On October 3 Amador told Joseph's attorney that the records had been turned over to the Dental Board and were in Clontz's custody. Later that day Joseph's attorney called Clontz to request the records. Clontz has admitted that he did not tell the truth to Joseph's attorney when he told him that he did not know where the records were. On October 11 Clontz contacted the IRS, and on the next day IRS Agent Michael Berry examined the records and took them into his possession. On October 24 Berry told Clontz that the IRS wanted to retain the records. Clontz requested a formal summons or subpoena from the IRS. The IRS issued a 26 U.S.C. Section 7609 third-party summons to Clontz on October 26, but the summons was backdated to October 12 to reflect the date on which Berry took possession of the records. No notice of the summons was sent to Joseph. Joseph's attorney was notified on November 1 that the records were in the possession of the IRS. Joseph was indicted on March 27, 1986 for filing false tax returns.

Joseph filed a motion to suppress the records on the basis that the records had been illegally seized. The district court granted the motion to suppress. It ruled that the state authorities should have returned the records upon Joseph's request following the conclusion of the state criminal proceedings and that an illegal seizure occurred when the IRS obtained the records without a warrant from the state authorities. The government filed its appeal pursuant to 18 U.S.C. Section 3731.

We review motion to suppress de novo. *United States v. Andrade*, 784 F.2d 1431 (9th Cir.1986). The findings of fact on which the district court based its conclusions are reviewed under a clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.) (en banc),

*cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The issue presented is whether the conduct of the state and federal officials amounted to an illegal search or seizure in violation of Joseph's Fourth Amendment rights. Joseph argues that the deceptive conduct by the state and federal officials and the IRS's failure to obtain a warrant for his records violated the Fourth Amendment. The government argues that Joseph's constitutional rights were not violated and that the IRS was not required to obtain a warrant.

Before examining these arguments, it is important to stress that the records were seized by the DA's office pursuant to a valid search warrant. There is no dispute that the DA's seizure of the records was lawful.

In concluding that Joseph's request for his records prior to the IRS's involvement "caused the IRS's taking without a valid warrant or summons to be an unreasonable seizure within the meaning of the Fourth Amendment," the district court relied heavily on *United States v. Birrell*, 470 F.2d 113 (2nd Cir.1972), as persuasive authority. However, there are material differences between *Birrell* and Joseph's case, and the ruling must be reversed.

In *Birrell*, the New York City police came across a suitcase, trunk, and boxes at the scene of a homicide in a hotel room. The police took the items back to the station under the assumption that the items belonged to the decedent. Approximately twelve hours later Birrell appeared at the station to claim the items because they belonged to him and requested their return. He was told that he would have to wait for the DA's approval. After Birrell's appearance at the station, an Assistant United States Attorney ("AUSA") read a newspaper report stating that Birrell had been paying the rent on the hotel room. The AUSA had been involved in an earlier indictment of Birrell in which Birrell had filed an affidavit of indigency. The AUSA suspected perjury in the affidavit because Birrell's payment of the rent indicated that he had funds which he had not reported. The AUSA obtained the DA's permission to inspect the documents contained in the box-

es and found evidence of perjury. Birrell was convicted of perjury on the basis of this evidence. He appealed seeking suppression of the evidence, and the court reversed the judgment with instructions to dismiss the indictment because Birrell's Fourth Amendment rights had been violated by the federal search of the evidence in police custody. The court ruled that although the items were properly in police custody, Birrell's request for his items "sufficiently manifested his claim [so] that a search by law enforcement officers of another sovereign for a different purpose could not be made without a warrant." *Id.* at 117.

In granting Joseph's motion to suppress, the district court reasoned that Joseph's case bore enough of a similarity to *Birrell* to lead to a similar decision. However, *Birrell* is not dispositive because in *Birrell* the focus of the police investigation was on the decedent. When Birrell's items were seized, the police were not investigating Birrell; they were investigating the decedent and the circumstances of her death. When the AUSA examined the items for evidence of perjury, he shifted the focus of the investigation to Birrell and his activities unrelated to the homicide. It was this shift in investigative focus that required the AUSA to obtain a warrant directed at discovering Birrell's illegal activities. Unlike Birrell, Joseph has always been the person upon whom the state and federal authorities have focused their investigation.

Another material distinction lies in the fact that, unlike *Birrell,* the state officials in Joseph's case initiated the transfer of the records to the federal authorities and volunteered the records. The *Birrell* opinion stated that a similar set of facts in its case could have led to an opposite ruling.

It can be argued that a different decision would be reached if, for example, the city police, knowing of the federal interest in Birrell, had on their own initiative delivered his papers to the Assistant United States Attorney, since then there would have been no federal seizure.

*Id.* at 117. This language supports the government's argument that no warrant was required because there was no federal seizure.

Joseph's case is closer to two cases from the Sixth Circuit which support the government's position. In *United States v. Gragotto,* 476 F.2d 1009 (6th Cir.1973), *cert. denied,* 421 U.S. 987, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975), a Louisville police detective lawfully seized business records that were found at the scene of a fire which was the subject of an arson investigation. The detective examined the records and determined that they were some sort of illegal betting records. He contacted the IRS and turned the records over to the federal authorities. The owner of the records was convicted of tax fraud on the basis of this evidence. The defendant argued that *Birrell* required a reversal of his conviction. The court rejected this argument and distinguished *Birrell* by noting that the Louisville authorities had initiated the contact with the IRS. It also stated: "Evidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken." *Id.* at 1014.

*Gargotto* was followed by *United States v. Lewis,* 504 F.2d 92 (6th Cir.1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975). In *Lewis* the defendants were convicted of a federal crime. At trial the government had introduced into evidence certain tools that had been obtained from Kentucky police officers without a warrant. The tools had been used as evidence by the local officials in a state criminal proceeding. After the conclusion of the first state trial, the defendants had filed a motion for the return of the items. The defendants argued that use of the tools as evidence in the federal trial was impermissible because the government had not obtained a warrant for those items. The court rejected the argument and stated: "The fact that a motion has been filed for the return of the evidence has no bearing on the rule that one police agency need not get a warrant prior to obtaining evi-

dence from another police agency." *Id.* at 104.

Under these cases, the Nevada official's initiation of the contact with the IRS eliminated the need for the IRS to issue a warrant for Joseph's records, and the fact that Joseph requested the return of his records before the IRS obtained them does not change the conclusion. These cases are in harmony with Ninth Circuit authority encouraging the intergovernmental exchange of evidence. *See United States v. Hearst,* 563 F.2d 1331, 1347 (9th Cir.1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (interagency exchange of evidence without warrant not violative of Fourth Amendment).

In addition to his argument that his records were illegally seized, Joseph also argues that the IRS's inspection of his records constituted an illegal search in violation of the Fourth Amendment because the inspection exceeded the scope of the search by the state authorities. This argument relies on *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), as controlling authority.

In *Walter,* pornographic films contained in sealed packages describing their contents were misdelivered to a private party. The recipient opened one or two of the twelve packages and then notified the FBI without viewing the films. FBI agents took the packages and viewed the films on a projector without obtaining a warrant. The issue before the Court was whether the viewing of the films without a warrant was an illegal search in violation of the Fourth Amendment.

The Court ruled that even though the FBI had been in lawful possession of the packages, mere possession of them did not confer authority to search their contents and view the films. The Fourth Amendment had been violated because the viewing was a warrantless search that had exceeded the scope of the private search.

"The projection of the films was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search. That separate search was not supported by any exigency, or by a warrant even though one could have easily been obtained." *Id.* at 657, 100 S.Ct. at 2402.

■ From his reading of *Walter,* Joseph argues that the IRS conducted an illegal search because it exceeded the scope of the state search. Joseph's reliance on *Walter* is misplaced. Unlike the FBI in that case, the IRS obtained Joseph's records from state authorities, not private parties. Federal examination of evidence in the state's possession does not constitute an independent search requiring the execution of a search warrant. *See United States v. Romero,* 585 F.2d 391, 396 (9th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *accord Jabara v. Webster,* 691 F.2d 272, 279 (6th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983). "This rule appears largely designed to avoid complex procedural barriers to cooperation between state and federal law enforcement authorities. Its theoretical underpinning must be that examination by another law enforcement agency is not a sufficiently distinct intrusion into the defendants' privacy to trigger the requirements of the Fourth Amendment." *Romero,* 585 F.2d at 396.

The state and federal authorities did not violate Joseph's Fourth Amendment rights against illegal searches and seizures, but the disturbing fact remains that the state authorities deliberately misled Joseph when he attempted to regain possession of his records. Our ruling should not be read as a condonation of the type of conduct involved. Whether the state authorities violated any other laws by their conduct is an issue that has not been presented to this court and need not be decided by us.[1]

---

1. Even if state procedures governing the return and transfer of legally seized property were violated in this case, the records would still be admissible in the federal proceeding. "[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." *United States v. Rickus,* 737 F.2d 360, 363–64 (3rd Cir.1984).

As a final matter, an issue involving the IRS and the issuance of the 26 U.S.C. Section 7609 summons to Clontz must be addressed. When the IRS issues a third-party summons to a recordkeeper, the IRS must notify the taxpayer of the summons. Joseph argues that the failure of the IRS to notify him of the summons to Clontz is an additional reason to suppress the evidence. The government argues that section 7609 and its requirements are inapplicable to this case and that the summons was merely intended to be a kind of receipt to acknowledge the transfer of the records to the IRS. The district court correctly ruled in the government's favor on this issue.

The cases support the position that section 7609 and its notice requirement are inapplicable to this case. Section 7609 is directed at third-party recordkeepers. In order to be a third-party recordkeeper for purposes of this section, the recordkeeper must be engaged in the making or keeping of records for the taxpayer's purposes. *United States v. Manchel, Lundy and Lessin*, 477 F.Supp. 326, 328 (E.D.Pa.1979) (cited approvingly for the proposition in *Rapp v. C.I.R.*, 774 F.2d 932, 934 (9th Cir.1985)). Clearly, Clontz and the Dental Board were not keeping Joseph's records on Joseph's behalf.

Joseph, however, points out that section 7609's definition of third-party recordkeeper includes attorneys. Joseph therefore concludes that because Clontz is an attorney he is a third-party recordkeeper and that section 7609 applies because the records were obtained from him. This argument has no merit. An attorney is a third-party recordkeeper only if he is the taxpayer's attorney. *Rapp*, 774 F.2d at 934 n. 1 (citing *Manchel, supra,* for proposition).

Clontz and the Dental Board are not third-party recordkeepers for purposes of section 7609. Therefore, the IRS was under no requirement to issue a section 7609 summons or to notify Joseph that it was seeking his records. Joseph's argument for suppression based on section 7609 must be rejected.

For these reasons, the district court's order suppressing the evidence is REVERSED and the case is REMANDED for further proceedings in accordance with this opinion.