**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Carlos CHAVEZ–VERNAZA, aka**
**Jose Chavez, aka "Pepe",**
**Defendant–Appellant.**

**Nos. 86–3178, 86–3187.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided Dec. 28, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc May 5, 1988.

John Henry Hingson, III, Oregon City, Or., for defendant-appellant.

Kenneth C. Bauman, Asst. U.S. Atty., Washington, D.C., for plaintiff-appellee.

Before WRIGHT, WALLACE and PREGERSON, Circuit Judges.

WALLACE, Circuit Judge:

Chavez–Vernaza (Chavez) appeals from his convictions for engaging in various drug-related activities, including possession and distribution of cocaine, in violation of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 et seq. He argues that reversal is required because the district court failed to suppress financial records introduced against him at trial, refused to allow him to examine presentence reports of government witnesses, denied his motion to seat Black jurors peremptorily challenged by the prosecutor, forbade cross-examination regarding the home addresses of government witnesses, overruled an objection to closing remarks of the prosecutor, and denied a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I

In 1982, the Portland Police Bureau began an investigation of Chavez. The police believed that he was involved in an organization that acquired and distributed cocaine in the Pacific Northwest. During this investigation, state and local law enforcement agents in Oregon obtained evidence establishing Chavez's involvement in wide-ranging illegal drug activities. Among the evidentiary items obtained by local officials were records secured from financial institutions concerning Chavez's assets and banking transactions.

Federal law enforcement agents became involved in the Chavez investigation in 1983. On March 25, 1983, federal agents obtained eleven search warrants pertaining to the investigation. In the fall of 1983, a federal grand jury investigation was initiated which resulted in an eleven count indictment against Chavez charging him with violating provisions of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 et seq., and with attempting to import cocaine in violation of 18 U.S.C. § 2.

Chavez surrendered himself to federal authorities. He was arraigned, entered pleas of not guilty to all counts, and was released from custody after posting $5,000 bail. Chavez failed to appear at his trial and the district court issued a bench warrant. Subsequently, the grand jury returned a two count indictment charging Chavez with failure to appear for trial in violation of 18 U.S.C. §§ 3146, 3150.

Nine months later, Chavez was arrested. The drug and failure to appear indictments were consolidated. Prior to trial, Chavez moved unsuccessfully for disclosure of the manner of acquisition of the financial records obtained by Oregon officials and for suppression of those records. Chavez also moved unsuccessfully for examination of presentence reports of various government witnesses.

During the jury selection process at the beginning of the trial, Chavez moved to seat two Black jurors peremptorily challenged by the prosecutor. The district court denied this motion after the prosecutor offered an explanation for the challenges.

The government's case consisted of the testimony of twenty-one former associates of Chavez, nineteen of whom had been given immunity, and eleven other non-immunized witnesses, including court personnel, law enforcement officers, and bank officials. Chavez did not call witnesses or testify. His defense consisted of challenges to the credibility of government witnesses and in allegations that the govern-

ment was politically motivated in bringing the prosecution against him. The district court denied Chavez the opportunity to elicit home addresses of some of the government witnesses during cross-examination, but allowed him to obtain this information out of the presence of the jury.

During his closing remarks, Chavez's attorney admitted that his client was guilty of failing to appear for his earlier trial, but charged that the prosecution for the drug activities was politically and racially motivated. At the end of his remarks, Chavez got up from his seat and approached Hingson, his attorney. Hingson then shook Chavez's hand and wished him good luck.

The prosecutor stated in his rebuttal argument that he had been accused during trial of racism and bigotry and stated that "If I am the Devil, Mr. Chavez is the same." Chavez's objection to this comment was sustained and the jury instructed to disregard the remark. The prosecutor's argument also included a reference to the hand-shaking incident: "At the end of Mr. Hingson's comments to you, Mr. Chavez came over and they shook hands, something that can't be cross-examined or commented on. But I submit to you, ladies and gentlemen—" Chavez objected to this remark, but was overruled, and his mistrial motion, motion to strike, and request for a cautionary instruction were later denied.

The jury returned with verdicts of guilty on nine of the eleven drug counts and both of the failure to appear counts against Chavez. Chavez timely appealed.

## II

Chavez argues that the district court erred in denying him the opportunity to establish that state officials seized financial records used against him at trial in viola-

tion of Oregon law. Specifically, he argues that the district court erred in denying his precautionary motion to suppress the records without affording him an evidentiary hearing on the question of the legality of the state seizure.

Chavez did not argue, either in the district court or on appeal, that the records were obtained in violation of any federal constitutional or statutory provision. Rather, Chavez claims that considerations of comity required suppression of the records if they were seized in violation of Oregon law,[1] and that the district court erred in failing to grant him the opportunity to establish that a violation of state law occurred.

The government responds on appeal, as it did in the district court, that under rule 402 of the Federal Rules of Evidence, relevant evidence is admissible in a federal prosecution unless prohibited by the federal Constitution, a federal statute, or the Federal Rules of Evidence. It reasons that because a violation of state law is irrelevant to the admissibility of evidence in a federal prosecution, Chavez was not entitled to an opportunity to establish that violations of state law occurred. The district court denied Chavez's precautionary motion to suppress without holding an evidentiary hearing on the question whether the seizure violated Oregon law, apparently agreeing with the government that federal standards, rather than Oregon law, governed the admissibility of the financial records obtained by state officials.

Chavez also argues that he was entitled to discovery of the manner in which state officials acquired his financial records. As we understand it, this argument is premised on the theory that federal prosecutors are obliged to assist a defendant in his

---

1. Oregon Revised Statutes § 192.555(1) provides in part:

 [n]o financial institution shall provide any financial records of any customer to a state or local agency.

 [n]o state or local agency shall request or receive from a financial institution any financial record of customers.

 Ore.Rev.Stat. § 192.555(1)(a) and (b). The statute provides for several exceptions to these gen-

 eral rules. For example, financial records may be obtained if pursuant to summons or subpoena, Ore.Rev.Stat. § 192.565, or pursuant to search warrant, Ore.Rev.Stat. § 192.570. In addition to sanctions for violations of its provisions, the Oregon statute provides that "[e]vidence obtained in violation of ORS §§ 192.550 to 192.595 is inadmissible in any proceeding." Ore.Rev.Stat. § 192.590(5).

efforts to determine the legality of a seizure of evidence by state officials and therefore must obtain documents and things pertaining to the seizure from state officials and turn these items over to him. The district court denied Chavez's discovery motion, apparently accepting the government's argument that federal prosecutors have no obligation to acquire information pertaining to a seizure by state officials of evidence the government plans to introduce at trial.

We are thus confronted with two issues: first, whether a federal trial court must afford a defendant an opportunity to establish that evidence obtained by state officers was seized in violation of state law where the defendant fails to allege a violation of any federal constitutional or statutory provision; and second, whether the United States Attorney is obliged to obtain from state officials information relating to the seizure of evidence he or she plans to introduce against the defendant. The first of these issues turns on whether federal or state law governs the admissibility of evidence seized by state officials in a federal prosecution. If federal law governs, a violation of state law is irrelevant to the admissibility of the evidence and the district court thus correctly denied Chavez's suppression motion without affording him an evidentiary hearing on the legality of the seizure under state law. The second issue turns on the scope of the government's disclosure obligations under Fed.R.Crim.P. 16(a).

## A.

We first address Chavez's argument that the district court erred in holding that federal courts are not to be bound by state law in determining the admissibility of evidence seized by state officials. The admissibility in federal court of evidence seized in violation of state law is a question of law. We thus review the district court's decision to admit evidence possibly seized in violation of Oregon law de novo. *United States v. Frazin*, 780 F.2d 1461, 1467 (9th Cir.) (*Frazin*), *cert. denied*, —— U.S. ——, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986).

We have consistently held that evidence obtained by federal officials acting in concert with state officials in violation of state law but in compliance with federal law is admissible in federal court. *See United States v. Kovac*, 795 F.2d 1509, 1511–12 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987); *United States v. Henderson*, 721 F.2d 662, 664 (9th Cir.1983) (per curiam) (*Henderson*), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984); *United States v. Adams*, 694 F.2d 200, 201 (9th Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983); *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir.1976) (en banc) (*Hall*), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed. 2d 793 (1977). However, we have never decided the precise question whether evidence seized by *state* officials in violation of state law is admissible in federal court where no federal involvement is present. *See Frazin*, 780 F.2d at 1467 n. 4 ("We need not decide whether state or federal standards govern the admissibility in a federal prosecution of evidence seized by state officers ..."); *Henderson*, 721 F.2d at 664–65 (observing that the question "remains undecided" and concluding that it need not be reached in that case); *United States v. Daniel*, 667 F.2d 783, 785 (9th Cir.1982) (per curiam) (declining to decide the question).[2]

**2.** In his brief in support of Chavez's petition for rehearing and suggestion for rehearing en banc, amicus argues that our decision is in conflict with circuit authority. Prior to the adoption of the Federal Rules of Evidence, the rule in the Ninth Circuit was that the legality of a search or seizure by state officers had to be judged by both state and federal standards when challenged in a federal prosecution. *See United States v. Wheeler*, 641 F.2d 1321, 1322 n. 1 (9th Cir.1981). However, intervening law has undermined the validity of that rule. We have not previously decided the question whether our prior rule survives the enactment of rule 402, which provides that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Chavez argues that the admissibility of evidence obtained by state officials acting independently of federal agents should be governed by state law notwithstanding the general rule that federal law governs the admissibility of evidence in federal court. He relies on dictum in *Henderson* that "federal courts should, in the interests of comity, defer to a state's more stringent exclusionary rule with respect to evidence secured without federal involvement." 721 F.2d at 665.

The government urges us to reject the *Henderson* dictum and to reaffirm our prior cases holding that evidence obtained in compliance with federal law is admissible in federal courts without regard to state law. It argues that there is no principled way to distinguish cases in which federal and state officials act in concert when obtaining evidence from those in which state officials act independently; in other words, if concerns of comity do not outweigh the federal government's interest in admitting evidence where federal and state officials act jointly, there is no reason to find these concerns controlling where state officials act alone.

 The government's argument is persuasive. When we have been required to make a decision on the issue, we have consistently stated that the admissibility of evidence obtained in violation of state law turns on whether a federal right has been infringed, not on the presence or absence of federal involvement at the evidence-gathering stage of an investigation. In *Hall*, for example, we stated that federal courts are not bound by state statutory or constitutional provisions when determining whether evidence obtained by state officers in apparent violation of state law must be excluded in federal court:

> Where no constitutional right has been abused, the admissibility of evidence is governed by common law principles, not by local statute.... At common law, evidence was admissible regardless of its illegal origins.... Therefore, wiretap evidence obtained in violation of *neither the Constitution nor federal law is ad-*

*missible in federal courts, even though obtained in violation of state law....*

543 F.2d at 1235 (emphasis added), *quoting United States v. Keen*, 508 F.2d 986, 989 (9th Cir.1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). Similarly, in *United States v. Gatto*, 763 F.2d 1040 (9th Cir.1985) (*Gatto*), we stated that it was inappropriate to apply the exclusionary rule in situations in which no recognized federal rights were threatened. In *Gatto*, we held that a district court should not exercise its supervisory powers to suppress evidence to remedy prosecutorial misconduct that "did not violate any constitutional provision, federal statute, [or] specific discovery order...." *Id.* at 1046.

The dictum in *Henderson* is anomalous in the context of these cases. *Henderson* reasoned that "it would undercut the deterrent function of a state's exclusionary rule if state officers were able to turn illegally seized evidence over to federal authorities...." 721 F.2d at 665. However, it is difficult to see why exclusion would be justified in cases where state officials act without federal involvement, but not in cases where federal and state officials act jointly. The harm to the state's interests appears to be identical in each case.

Nor is *Henderson* the only dicta on the subject. In *United States v. Joseph*, 829 F.2d 724, 728 n. 1 (9th Cir.1987) (*Joseph*), we stated that "[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law," *quoting United States v. Rickus*, 737 F.2d 360, 363–64 (3d Cir.1984) (*Rickus*). *Joseph* provides further support for our observation that the *Henderson* dictum represents a departure from our cases holding that the admissibility of evidence in federal court is governed by federal rather than state standards.

Moreover, to hold that federal courts must look to state law to determine the admissibility of evidence seized by state officials acting independently of federal agents would create an unnecessary con-

Fed.R.Evid. 402; *see also Wheeler*, 641 F.2d at 1322 n. 1.

flict with other circuits. In *Rickus*, the Third Circuit directly confronted the issue raised in this appeal. The court refused to create an exception to the rule that evidence obtained in accordance with federal law is admissible in federal court even when obtained by state officers in violation of state law. The court reasoned that applying the exclusionary rule to evidence seized in violation of state laws would hamper the enforcement of valid federal laws by rendering relevant and reliable evidence unavailable. *Rickus*, 737 F.2d at 364. The Third Circuit also pointed out that sanctions already exist to control state officials' conduct—notably, exclusion of the evidence in state court. The court concluded that any "additional deterrent effect to be gained from excluding this evidence is small, and is far outweighed by the costs to society of excluding the evidence." *Id.* at 364.

Similarly, in *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987), the Second Circuit held that evidence that is admissible under federal law should not be barred from a federal trial because of a state exclusionary rule. The court specifically considered, and rejected, our suggestion in *Henderson* that comity might require deference to a state's more restrictive exclusionary rule where a seizure of evidence by state officials arguably violates state law. *Id.* at 203–04. The court held that important federal policy considerations, including the desirability of uniformity of evidentiary rules among the federal courts, outweigh interests of comity and support the application of federal law in federal trials. *Id.* at 204.

We agree with the Second and Third Circuits that requiring federal district courts to look to state law when determining the admissibility of evidence obtained in accordance with federal law would hamper the enforcement of valid federal laws and undermine the policy favoring uniformity of federal evidentiary standards. We also find no justification for excluding evidence illegally seized by state officials acting independently of federal officials while admitting such evidence in cases in which federal involvement is present.

■ In addition, absent a strong reason to do so, we will not create a direct conflict with other circuits. *United States v. Larm*, 824 F.2d 780, 784 (9th Cir.1987); *United States v. Gwaltney*, 790 F.2d 1378, 1388 n. 4 (9th Cir.1986) (*Gwaltney*), *cert. denied*, —— U.S. ——, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). There is no reason to do so here. We therefore reject the suggestion in *Henderson* that federal courts should defer to state law in deciding whether to admit evidence seized by state officers, adopt the contrary suggestion in *Joseph*, and reaffirm our holding in *Hall* that evidence seized in compliance with federal law is admissible without regard to state law. 543 F.2d at 1235. The district court thus correctly determined that Chavez was not entitled to an opportunity to establish that the seizure of the financial records violated state law.

B.

Chavez also contends that the district court improperly denied his motion for disclosure of the manner in which the state officials acquired the financial records. This argument is premised on the notion that the government must disclose the manner in which evidence it plans to use in its case-in-chief was acquired if there is any chance that it was seized illegally. The government responds that it satisfied whatever obligation it had to produce information relating to the acquisition of the records by informing Chavez that they were obtained by state officials. The government argues that any other information relating to the acquisition of the records was in the custody and control of Oregon state employees, and that it thus had nothing further to disclose.

■ Chavez's motion, though framed under Fed.R.Crim.P. 6(e)(3)(C)(i) and 12(d)(2), is essentially a discovery motion. We ordinarily review an order denying or limiting the scope of discovery for an abuse of discretion, *United States v. Domina*, 784 F.2d 1361, 1372 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). However, the question whether the

federal government must provide discovery of documents in the possession or control of state officials is a legal question reviewable de novo. *Gatto,* 763 F.2d at 1047.

■ Rule 16(a)(1)(C) provides that criminal defendants are entitled to discovery of papers, documents, and other tangible evidence "which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial...." Fed.R.Crim.P. 16(a)(1)(C). Rule 16(d)(2) states that a district court has discretionary authority to "order [a] party to permit discovery ... or may enter such other order as it deems just" to remedy a failure by the government to permit discovery of evidence described in rule 16(a)(1)(C). Chavez argues that the district court abused its discretion in refusing to order the government to produce documents or other evidence pertaining to the state's acquisition of Chavez's financial records. Chavez does not allege that the federal prosecutor had possession or control of the items he sought. Rather, he apparently argues that the government was obliged to obtain relevant items from state authorities and to turn those items over to him.

We rejected this argument in *Gatto.* There, we held that the triggering requirement of a discovery request under rule 16(a)(1)(C) is that the papers, documents or tangible objects requested be in the actual custody or control of the federal government. We concluded that the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control. 763 F.2d at 1048–49. Therefore, we conclude that the district court did not err in denying Chavez's discovery request.

### III

Prior to trial, Chavez requested an opportunity to examine presentence reports of immunized government witnesses as part of his motion for disclosure of impeaching information. After reviewing the reports *in camera,* the district judge denied Cha-

vez's motion for inspection of the reports and instead disclosed only that information which he found would assist Chavez in his efforts to impeach the witnesses. Chavez argues that this procedure violates his rights under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) (*Brady*), to obtain evidence that is "material either to guilt or to punishment...."

■ It is well settled that a criminal defendant has no constitutional right to examine presentence reports. *United States v. Walker,* 491 F.2d 236, 238 (9th Cir.) (*Walker*), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *Fernandez v. Meier,* 432 F.2d 426, 427 (9th Cir.1970) (per curiam). Presentence reports are prepared by probation officers for the court's use in sentencing; they are not public documents subject to prosecutorial control. *Walker,* 491 F.2d at 238. The district judge, in his discretion, may thus deny an accused an opportunity to inspect the report. *Id.* Where, as here, a defendant alleges that presentence reports contain material discoverable under *Brady,* the court, in its discretion, may make an *in camera* inspection of the materials or may rely on an examination by a probation officer. *Id.* It is clear, however, that the defendant is not entitled under *Brady* to inspect the materials himself. *Id.; see also Pennsylvania v. Ritchie,* — U.S. —, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987) (*in camera* review of sensitive reports by trial judge ensures fair trial). We therefore reject Chavez's contention that the trial court's denial of his request to examine presentence reports of government witnesses denied him due process of law.

### IV

■ Chavez, who is a Peruvian national and not a Black, argues that the government's use of its peremptory challenges to remove two Black jurors from the venire violated his right to due process of law. Chavez bases his challenge on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*), which held that

a criminal defendant may establish a prima facie case of purposeful discrimination in the selection of his petit jury by demonstrating that he is a member of a cognizable racial group, that the prosecutor used peremptory challenges to remove members of the defendant's race from the venire, and that other relevant circumstances exist which raise an inference that the prosecutor excluded members of the venire on account of their race. *Id.* 106 S.Ct. at 1723. Chavez argues that he successfully established a prima facie case under *Batson* by demonstrating that the government used its peremptory challenges to exclude the only Black members of the venire. Chavez then argues that the trial court failed to conduct a sincere and reasoned evaluation of the prosecutor's proffered explanations for its removal of the Black jurors.

The government argues that because it did not use its peremptory challenges to "remove from the venire members of the defendant's race," *id.*, Chavez failed to establish a prima facie case of discrimination under *Batson.* We agree. To raise a prima facie case of discriminatory use of peremptory challenges under *Batson,* a criminal defendant "first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id.* Chavez failed to satisfy these preliminary requirements because he did not show that the excluded jurors were members of his race. *United States v. Vaccaro,* 816 F.2d 443, 457 (9th Cir.1987) (a defendant cannot establish a prima facie case under *Batson* unless he shows that members of his race were excluded from the jury).

Because we conclude that Chavez failed to make the preliminary showing necessary to raise an inference of discrimination under *Batson,* we need not reach the question whether the trial court properly evaluated Chavez's *Batson* claim. We thus affirm the trial court's denial of Chavez's motion to reseat the two jurors.

### V

Chavez argues that the trial court violated his sixth amendment confrontation rights by forbidding cross-examination about the home addresses of immunized government witnesses. We review a district court's limitation of the scope of cross-examination for an abuse of discretion. *United States v. Washington,* 797 F.2d 1461, 1475 n. 19 (9th Cir.1986).

In *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (*Smith*), the Supreme Court stated that:

> when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives.... To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131, 88 S.Ct. at 750, *quoting Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Chavez claims that *Smith* establishes the right to elicit the home addresses of government witnesses in open court. The government responds that *Smith* requires only that the defendant be allowed to elicit information sufficient to allow him to identify the witnesses with their environment. It observes that the government witnesses each stated their true names and occupations, described their professional backgrounds, and described their involvement with Chavez in open court, and that Chavez was allowed to obtain the witnesses' home addresses out of the presence of the jury. The government contends that the district court therefore did not abuse its discretion in refusing to require that the witnesses state their home addresses during cross-examination.

We hold that the district court did not abuse its discretion in limiting cross-examination of the witnesses. In *Ahlswede v. Wolff,* 720 F.2d 1108, 1110 (9th Cir.1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 155 (1984), we held that where a witness gives his true name and occupation, describes his professional background, and discloses his relationship with the defendant, disclosure of the witness's residence address is unnecessary. Although

Chavez was entitled under the sixth amendment to elicit information on cross-examination that would enable him to identify the witnesses with their environment, he was able to do so here. Each of the witnesses testified to his involvement with Chavez, gave his true name and occupation, and was subject to examination regarding the general area of his residence. Moreover, Chavez was given the specific residence address of each witness to aid him in investigating the witnesses. We hold, therefore, that Chavez was not denied the opportunity to elicit information that would enable him to identify the witnesses with their environment and to investigate these witnesses out of court.

## VI

Chavez argues that two comments by the government deprived him of his constitutional right to a fair trial. The government asserts that both comments were fair responses to arguments and tactics of the defendant's trial attorney. It argues that, even if the comments overstepped the bounds of the "invited reply" doctrine, they were harmless error.

 Prosecutorial comments to which the defendant objects are reviewed for "harmless error." *United States v. Young*, 470 U.S. 1, 13 n. 10, 105 S.Ct. 1038, 1045 n. 10, 84 L.Ed.2d 1 (1985) (*Young*); *United States v. Endicott*, 803 F.2d 506, 513 (9th Cir.1986) (*Endicott*). We need not reach the question whether a comment was improper if it is clear that the trial judge promptly neutralized any harm to the defendant by giving appropriate curative instructions to the jury. *Endicott*, 803 F.2d at 513. Where, however, a defendant's objection to prosecutorial remarks is overruled, we examine the remarks within the context of the whole trial to determine whether it is more probable than not that the allegedly improper remarks materially affected the verdict. *Id.; United States v. Prantil*, 764 F.2d 548, 556 (9th Cir.1985).

 Chavez contends that the prosecutor's remark that "If I am the Devil, Mr. Chavez is the same" must be regarded as violative of Chavez's due process rights,

even though Chavez's objection to this remark was sustained and the jury instructed to disregard it. We disagree. "A trial judge may cure the effect of improper prosecutorial comments 'by admonishing counsel to refrain from such remarks or by giving appropriate curative instructions to the jury.'" *Endicott*, 803 F.2d at 513, *quoting United States v. McKoy*, 771 F.2d 1207, 1213 (9th Cir.1985) (*McKoy*). In the present case, the district judge promptly neutralized the prosecutor's comment by sustaining Chavez's objection and instructing the jury to disregard the remark. Because we are convinced that the district court's immediate response to Chavez's objection eliminated any prejudice to Chavez flowing from the remark, we need not address the government's argument that the prosecutor's comments were invited responses to defendant's trial tactics. *Endicott*, 803 F.2d at 513.

Chavez also contends that the prosecutor's remarks concerning the hand-shaking incident were improper comments on Chavez's off-the-witness stand behavior and impermissibly drew attention to Chavez's election not to testify at trial. Because Chavez's objection to these remarks was overruled, we must inquire whether it is likely that these remarks affected the jury's ability to judge the evidence fairly. *Id.*

 We first consider Chavez's claim that the prosecutor's remark concerning the handshake constituted impermissible comment on Chavez's off-the-witness stand behavior. In doing so, we take into account defense counsel's behavior, as well as the prosecutor's response, to determine whether the prosecutor's comment was "invited." *Young*, 470 U.S. at 11, 105 S.Ct. at 1044–45. Though the prosecutor is not entitled to use improper tactics to counter improper tactics of defense counsel, *McKoy*, 771 F.2d at 1212, if a prosecutor's remarks are "invited" and do no more than respond in order to "right the scale," such remarks do not warrant reversal. *Young*, 470 U.S. at 12–13, 105 S.Ct. at 1045; *Gwaltney*, 790 F.2d at 1385.

■ The prosecutor's comment upon the defendant's handshake in the present case clearly was in response to the conduct of the defendant and his lawyer. It is apparent that Chavez and his lawyer *desired* that the jury focus its attention on Chavez and take note of the handshake and the good luck comment. We do not believe that the prosecutor's comment on this unusual behavior improperly caused the jury to focus on the defendant's off-the-witness stand conduct. It was the defendant, not the prosecutor, who invited the jury to view Chavez's demeanor. We therefore fail to see how the prosecutor's truncated comment on the handshake prejudiced Chavez in any way.

■ We also reject Chavez's contention that the prosecutor's comment that the handshake could not be cross-examined constituted an impermissible comment on Chavez's decision not to testify. We do not examine the remark in isolation, but "in the context of the entire trial, including the conduct of defense counsel." *McKoy,* 771 F.2d at 1212. When viewed in this context, we believe that this remark did not improperly focus attention on Chavez's failure to testify, but on the handshaking incident initiated by the defendant and his counsel. Because the comment referred to the handshake, rather than to Chavez's decision not to testify, we find it more probable than not that the jury did not understand it as a negative reference to Chavez's silence at trial. In addition, the fact that the jury acquitted Chavez of two of the crimes with which he was charged indicates that the prosecutor's comment did not affect the jury's ability to weigh the evidence independently and fairly. *Young,* 470 U.S. at 18 n. 15, 105 S.Ct. at 1045 n. 15. Therefore, we do not find that his comment, standing alone, justifies reversal. *Id.* at 11, 105 S.Ct. at 1045. We conclude that the prosecutor's remarks did not amount to prejudicial error.

AFFIRMED.

PREGERSON, Circuit Judge, concurring in the result.

Although I agree with the result in Section II of the majority opinion, I would affirm on the statutory ground alone. As noted in part IIB of the opinion, Chavez did not allege that the prosecutor still had possession of the financial records. Thus, he did not meet his burden for disclosure under Fed.R.Crim.P. 16(a)(1)(c). *See United States v. Gatto,* 763 F.2d 1040 1047–49 (9th Cir.1985).

I part company with the majority opinion in this respect: There is no evidence of any violation of state law. Perhaps such evidence would have come to light had the court granted the motion for disclosure. That, however, is purely a matter of speculation. Because there is no evidence that the state officers obtained the financial records in violation of state law, I cannot see any basis for deciding the question discussed in section IIA of the majority opinion—whether evidence obtained by state officers in violation of state law should be excluded in federal court. That question was not before us.

If I were to decide the exclusionary issue, however, I would adhere to our language in *United States v. Henderson,* 721 F.2d 662, 665 (9th Cir.1983) (per curiam) ("federal courts should, in the interest of comity, defer to a state's more stringent exclusionary rule with respect to evidence secured without federal involvement", *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984). To hold otherwise is to allow state officers to violate state law with impunity. As we noted in *Henderson,* "it would undercut the deterrent function of a state's exclusionary rule if state officers were able to turn illegally seized evidence over to federal authorities whenever they suspected the subject of the investigation of an offense susceptible to federal, as well as state, prosecution." *Id.* If the issue were properly before us, I would reverse on this basis.