**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 2308015660 |
| | ) | |
| | ) | |
| DARREN STAATS, | ) | |
| Defendant. | ) | |

Submitted: February 19, 2025
Decided: April 8, 2025

### COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF BE SUMMARILY DISMISSED

This 8th day of April, 2025, upon consideration of Defendant Darren Staats' ("Defendant") February 19, 2025 Motion for Postconviction Relief, Defendant's Motion for the Appointment of Counsel, and the record in this matter, the following is my Report and Recommendation.

### I.    BACKGROUND

On August 19, 2023 at approximately 11:42 p.m., Wilmington Police Department ("WPD") officers were notified of gunshots fired in the 1200 block of West 3rd Street, Wilmington, Delaware.[1]   As WPD officers arrived to the area, they observed and later seized six 9-millimeter shell casings on the southern sidewalk,

---

[1] *State v. Staats*, Case No. 2308015660, Adult Complaint and Warrant, Exhibit B, p. 1.

just east of 1200 West 3rd Street.[2]  On August 28, 2023, WPD Corporal Shea reviewed surveillance video from the Latin American Community Center ("LACC"), which recorded the August 19 shots fired incident.[3]  The video showed a shirtless black male exit the residence of 1202 West 3rd Street and approach a black colored vehicle parked in front of the same residence.[4]  After some discussion with the vehicle occupants, a subject later identified as the Defendant exited the rear right side of the vehicle and walked to the entrance of an alleyway just east of 1200 West 3rd Street.[5]  At 10:47 p.m., the video depicted Defendant "raising his right arm and what appear[ed] to be approximately five (5) muzzle flashes [were] then seen emanating from his hand area, which is consistent with a firearm being discharged."[6]  Defendant then walked westbound on the southern sidewalk, at which point the shirtless person approached him.   Defendant handed the shirtless person a small, shiny metallic object consistent with a firearm.[7]  The shirtless man then re-entered 1202 West 3rd Street.[8]

Defendant re-entered the black vehicle on the rear right passenger side.[9]  When the police arrived at the scene on August 19, 2023, they contacted the

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

occupants of the vehicle, including Defendant,[10] who was the sole rear occupant of a black Dodge Magnum.

A DELJIS inquiry revealed Defendant was a person prohibited from possessing a firearm and ammunition due to September 22, 2015 felony convictions for Possession of a Firearm During the Commission of a Felony, Assault Second Degree and Conspiracy Second Degree.[11]

## II.    PROCEDURAL HISTORY

On August 31, 2023, three days after the police reviewed the LACC surveillance camera footage, WPD officers arrested Defendant and charged him with Possession of a Firearm by a Person Prohibited; Possession of Firearm Ammunition by a Person Prohibited; and Discharging a Firearm on a City Street.[12]  On December 4, 2023, a New Castle County Grand Jury indicted Defendant for Possession of a Firearm by a Person Prohibited[13] and Possession of Firearm Ammunition by a Person Prohibited.[14]  On June 3, 2024, Defendant pled guilty to Possession of a Firearm by a Person Prohibited,[15] and this Court immediately sentenced him to an

---

[10]  *Id.*, p. 2.
[11]  *Id.*  See *State v. Darren Staats*, Superior Court Case No. 1411008391.
[12]  *State v. Staats*, Case No. 2308015660, Adult Complaint and Warrant, Exhibit A.  Discharging a Firearm on a City Street is a violation of the Wilmington City Code.
[13]  11 *Del. C.* § 1448.
[14]  *Id*.  *See* D.I. 5, Indictment.  The State did not indict the Defendant for the Wilmington City Code violation.
[15]  D.I. 18, Plea Agreement.

aggregate term of fifteen years at Level V, suspended after serving ten years, followed by probation.[16]

The plea colloquy reflects Defendant spent approximately thirty minutes discussing the State's plea offer with counsel before entering the plea,[17] and Defendant expressly advised the Court: the Plea Agreement reflected the "entire agreement with the State;"[18] no one had forced or threatened him to enter the plea;[19] he had not been promised anything that was not in the Plea Agreement;[20] and Defendant had an opportunity to discuss the plea agreement with counsel, and if he had any questions for counsel prior to the entry of the plea, counsel answered them to his satisfaction.[21]

This Court then reviewed the Truth in Sentencing Guilty Plea Form with Defendant. Defendant acknowledged he answered all the questions on the form truthfully,[22] and he was "satisfied with [his] lawyer's representation [ ] and that [counsel had] fully advised [him] of [his] rights."[23] This Court then read the charge of Possession of a Firearm by a Person Prohibited to Defendant, and the following discussion occurred:

---

[16] D.I. 20, Sentence Order.
[17] D.I. 25, June 3, 2024 Guilty Plea Colloquy and Sentencing Proceeding at 17:18 – 18:15.
[18] *Id.* at 21:22 – 22:1.
[19] *Id.* at 22:2-4.
[20] *Id.* at 22:5-7.
[21] *Id.* at 22:8-15.
[22] *Id.* at 23:8-11
[23] *Id.* at 24:17-20.

**The Court:**  Do you understand that charge?
**Defendant:**  Yes.
**The Court:**  How do you plead?
**Defendant:**  Guilty.
**The Court:**  Are you pleading guilty because you committed the offense that  I just read to you?
**Defendant:**  Yes.
**The Court:**  The Court finds the plea knowingly, voluntarily and intelligently made, with an understanding of the nature of the charges and consequences.[24]

On November 18, 2024, counsel filed Appellant's Non-Merit Brief Under Rule 26(c) ("Appellant's Brief").[25]  Appellant's Brief included a Motion to Withdraw from Representation, wherein counsel concluded that, "based on a complete and careful examination of the record, there [were] no arguably appealable issues."[26]  Consistent with Supreme Court Rule 26, counsel notified Defendant he would include in his Opening Brief any appellate points Defendant wished the Supreme Court to consider on appeal.  Defendant did not respond to counsel's invitation.[27]  On January 3, 2025, the Supreme Court denied Defendant's appeal, opining:

> Having reviewed the record, we conclude Staats' appeal is wholly without merit and devoid of any arguably appealable issue. We are also satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Staats could not raise a meritorious claim in [his] appeal.[28]

---

[24] *Id.* at 26:1-21.
[25] *Staats v. State*, No. 251, 2024, Appellant's Brief.
[26] *Staats*, 2025 WL 25804, at *1 (Del. Jan. 3, 2025).
[27] *Staats v. State*, No. 251, 2024, Appellant's Brief, p. 6.
[28] *Staats*, 2025 WL 25804, at *1.

5

On December 23, 2024, Defendant filed a Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61 ("Motion"),[29] and a Motion for the Appointment of Postconviction Counsel.[30] For the reasons discussed *infra*, I recommend this Court summarily dismiss both of Defendant's pending Motions.

## III. DISCUSSION

### 1. MOTION FOR APPOINTMENT OF POSTCONVICTION COUNSEL.

Rule 61 provides this Court the discretionary authority to appoint postconviction counsel when a Defendant enters a guilty plea.[31] In that regard, Rule 61(e)(3) expressly provides:

> (3) *First postconviction motions in guilty plea cases.* The judge may appoint counsel for an indigent movant's first timely postconviction motion and request for appointment of counsel if the motion seeks to set aside a judgment of conviction that resulted from a plea of guilty or nolo contendere only if the judge determines that: (i) the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable; (ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or nolo contendere; (iii) granting the motion would result in vacatur of the judgment of conviction for which the movant is in custody; and (iv) specific exceptional circumstances warrant the appointment of counsel.[32]

Defendant has failed to satisfy all four requirements of Rule 61(e)(3). Specifically, while Defendant raised a claim that counsel was ineffective in relation to the guilty

---

[29] D.I. 34.
[30] D.I. 35.
[31] Super. Ct. Crim. R. 61(e)(3).
[32] *Id.*

plea because he alleged counsel coerced him into entering the plea, that claim is not "substantial" as it is contradicted by both counsel's affidavit[33] and the plea colloquy transcript.[34] During the plea colloquy, Defendant admitted he was satisfied with counsel's representation, was fully advised of his rights, and was neither coerced nor forced to plead guilty by anyone. Defendant has also failed to identify any "specific exceptional circumstances" which warrant the appointment of counsel. Under these circumstances, I recommend Defendant's Motion for Appointment of Postconviction Counsel be denied.

## 2. MOTION FOR POSTCONVICTION RELIEF

When a defendant seeks to collaterally attack a guilty plea based on ineffective assistance of counsel, he bears the burden of proving counsel provided ineffective representation.[35] To that end, where a defendant enters a guilty plea, they must show that "counsel's representation fell below an objective standard of reasonableness, and counsel's actions were so prejudicial that there is a *reasonable probability* that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."[36]

---

[33] D.I. 40.
[34] D.I. 25.
[35] *MacDonald v. State*, 778 A.2d 1064, 1075 (Del. 2001).
[36] *Id., also see Somerville v. State*, 703 A.2d 629, 631 (Del. 1997), citing *Albury v. State*, 551 A.2d 53, 58 - 60 (*quoting Strickland v. Washington*, 466 U.S. 668, 689 - 694 (1984), *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

### a. Defendant's Claims.

Defendant raises several postconviction claims. First, he asserts counsel was ineffective because he did not call a witness to testify at the preliminary hearing, and Defendant contends that witness "was responsible for and claimed ownership of the firearm that Defendant had been charged with." Defendant next argues counsel was ineffective for failing to "file a motion to suppress [a] firearm and a video purportedly depicting Defendant possessing said firearm."[37] Third, Defendant asserts "the Grand Jury refused to indict [him] on gun charges." Fourth, Defendant argues counsel was ineffective because he "did not meet with Defendant outside of scheduled court appearances to discuss the case and evidence,"[38] and "counsel failed to communicate with Defendant at any point in the case to discuss trial strategy or discovery materials."[39] Fifth, Defendant asserts counsel was ineffective "for failing to file a Motion to Dismiss the case or for bail reduction" after the State failed to indict Defendant within forty five days of arrest.[40] Sixth, Defendant argues counsel was ineffective for not "requesting medical records of Defendant to corroborate Defendant's claims of serious medical conditions."[41] Finally, Defendant asserts counsel "coerced Defendant into pleading guilty by giving him a daunting

---

[37] D.I. 34, p. 4.
[38] *Id.*
[39] *Id.*, p. 5.
[40] *Id.*
[41] *Id.,* p. 5-6.

8

ultimatum: take 10 years as a result of pleading guilty and try to give it back, or go to trial and get life when [Defendant] is found guilty."[42]

### b. Application of Procedural Bars.

Before considering the merits of any postconviction claim, this Court must first determine whether any of Rule 61's procedural bars are applicable.[43] Under Rule 61, a postconviction motion can be procedurally barred for being untimely filed, successive, procedurally defaulted, and/or subject to former adjudication.[44]

Here, upon review, the procedural bars are inapplicable. This is Defendant's first, timely filed Motion. His claims are not procedurally barred pursuant to Rule 61(i)(3) because Defendant's ineffective assistance of counsel claims could not have been raised at any earlier stage in the proceeding,[45] and these claims were not formerly adjudicated.[46]

### c.    Defendant's Claims are Waived.

Generally, as a matter of law, when a defendant enters a knowing and voluntary guilty plea, postconviction claims which allege "defects or errors occurring prior to the entry of the plea" are waived.[47] Additionally, with respect to

---

[42] *Id.*, p. 6.
[43] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[44] *See* Super. Ct. Crim. R. 61(i)(1)-(4).
[45] *See Green v. State*, 230 A.3d 160, 175-76 (Del. 2020); *Saab v. State*, 2021 WL 2229631 at *2 (Del. May 18, 2021); *Whittle v. State*, 2016 WL 2585904 at *3 (Del. April 28, 2016).
[46] *See generally* Super. Ct. Crim. R. 61(i)(4).
[47] *Johnson v. State*, 2008 WL 4830853, at *1 (Del. Nov. 7, 2008); *also see Alexander v. State*, 4809624 (Del. Nov. 5, 2008) (*citing Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003)).

9

Defendant's first claim – that counsel failed to call a witness at the preliminary hearing – this Court has long held a defendant's subsequent indictment by the Grand Jury corrects any defect or irregularity, jurisdictional or procedural, in the original complaint, warrant, or preliminary hearing.[48]    All of Defendant's claims allege errors or defects which occurred prior to the entry of the plea, except for his final claim, where he argues counsel coerced him into entering the plea.    By virtue of Defendant entering a knowing and voluntary plea, Defendant cannot prosecute his claims in a postconviction proceeding, and he cannot demonstrate prejudice.

As to Defendant's remaining claim – wherein he alleges counsel coerced him into entering the guilty plea by giving him a "daunting ultimatum" – the record simply does not support Defendant's claim.    As noted *supra*, during the plea colloquy, Defendant informed this Court that no one had forced or threatened him to enter the plea.[49]    And, on the Truth in Sentencing Guilty Plea form, Defendant represented that he was satisfied with his counsel's representation, counsel fully advised him of his rights, and he answered all of the questions on the form "truthfully."[50]    The Defendant then pled guilty to the PFBPP offense because he in

---

[48] *McGlotten v. State,* 2011 WL 3074790, at *2 (Del. July 25, 2011).    *Evans v. Redman*, 1987 WL 37253 at *1 (Del. Apr. 28, 1987), *citing United States v. Walker,* 9th Cir., 491 F.2d 236, 238 (1974); *Commonwealth v. Bruno*, 201 A.2d 434, 437 (Pa. Super. 1964).    Additionally, a petitioner's failure to timely raise these claims before trial constitutes a waiver of same. *Id. citing* Super. Ct. Crim. R. 12(b)(2); *United States v. Bistram*, 153 F.Supp. 816, 818 (D.N.D. 1957), *aff'd*, 253 F.2d 610 (8th Cir. 1958).

[49] D.I. 25 at 22:2-4.

[50] *Id.* at 22:8 – 23:11.

fact committed it.[51]  A defendant's statements during a plea colloquy are presumed to be truthful,[52] and a defendant's representations to this Court during the plea colloquy create a "formidable barrier in any subsequent collateral proceedings."[53] The record does not support a reasonable probability Defendant would have insisted on going to trial.

> **d.    Assuming *arguendo* that Defendant's claims were not waived, they are nonetheless unsupported by the record, and he cannot demonstrate prejudice.**

In a postconviction proceeding where a defendant alleges ineffective assistance of counsel in the context of the entry of a guilty plea, he "must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[54]  The record does not support a conclusion that Defendant would not have pled guilty and insisted on a trial, and he has failed to demonstrate prejudice.

First, Defendant received a very favorable plea. Due to Defendant's criminal history, if he were convicted of both charges at trial, he faced between ten to thirty-one years incarceration.[55]  If the State moved to have Defendant declared a habitual offender (which he qualified for, given his criminal record), he faced a minimum

---

[51]  D.I. 25 at 26:1-21.
[52]  *See State v. Smith*, 2024 WL 1577183, at *6 (Del. Super. Apr. 11, 2024), citing *Somerville*, 703 A.2d at 632.
[53]  *Id.*, quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).
[54]  *MacDonald,* 778 A.2d at 1075 (*citing Hill,* 474 U.S. at 59).
[55]  *Id.* at 7:12-17.

mandatory sentence of fifteen years up to life imprisonment (due to the application of 11 *Del. C.* § 4214(d)).[56] On June 3, 2024, the State offered Defendant a plea to the PFBPP charge, and the State agreed not to seek to have Defendant declared and sentenced as a habitual criminal. The State also agreed to limit its sentence recommendation to fifteen years at Level V, suspended after serving ten years, followed by probation.[57] Defendant's plea took a potential life sentence off the table and the State recommended the non-habitual minimum mandatory sentence despite Defendant's extensive violent felony criminal record.

Next, Defendant's claims are not supported by the record. First, Defendant claims there was a prospective witness who could have testified at the preliminary hearing that they were "responsible for and claimed ownership of the firearm that Defendant had been charged with." But Defendant does not identify the alleged witness, and more importantly, whether someone else was "responsible for" or "owned" the firearm is not dispositive. The Defendant was observed on a video recording firing off 5-6 rounds from a handgun. By virtue of his criminal record, he is prohibited from possessing any firearm. Ownership or responsibility for a firearm is not a relevant consideration.

---

[56] *Id.* at 7:18-22.

[57] *Id.* at 21:10-21. The Truth in Sentencing Guilty Plea form, which Defendant reviewed and signed, indicates his criminal record includes fourteen prior felony convictions – four convictions for Burglary Second Degree; five convictions for Burglary Third Degree; one conviction for Theft of a Senior; one conviction for Attempted Theft; one conviction for Theft; and two convictions for Escape Second Degree. *See* D.I. 21.

12

Defendant also asserts counsel should have filed a motion to suppress the gun and the video recording obtained from the LACC.  But, according to counsel's affidavit, the police searched the suspect's apartment for the gun only after obtaining a valid search warrant for that property, and the Defendant lacked standing to object to the search of that apartment, as he "maintained he had not lived, had recently or temporarily stayed, and had no ownership or possessory rights in the place searched."[58]  And, Defendant cannot claim an expectation of privacy in a third party's surveillance video which captured him firing a handgun on a public sidewalk, so a motion to suppress the gun and the LACC video would have been meritless.

Defendant next claims the "Grand Jury refused to indict [him] on gun charges."[59]  Not so.  Defendant was arrested for three offenses:  Possession of a Firearm by a Person Prohibited, Possession of Firearm Ammunition by a Person Prohibited, and Discharging a Firearm on a City Street, a misdemeanor violation of the Wilmington City Code.[60]  When the State presented the case to the Grand Jury, they sought to indict him for two felony, gun related offenses:  Possession of a Firearm by a Person Prohibited and Possession of Firearm Ammunition by a Person

---

[58] D.I. 40, p. 3.
[59] D.I. 34, p. 4.
[60] D.I. 1, Adult Complaint and Warrant.

Prohibited.[61] The Grand Jury did not "refuse to indict [him] on gun charges,"[62] it indicted him on gun and related ammunition charges.

As to Defendant's claim that counsel was ineffective for failing to meet with him "outside of scheduled court appearances to discuss the case and evidence,"[63] counsel represents he "spoke to Darren Staats via phone calls, videos and letters."[64] Further, that Defendant reviewed "all videos related to his case via Zoom."[65] More importantly, however, Defendant fails to articulate how meeting with counsel would have made him insist on going to trial instead of accepting the plea.

Defendant next argues counsel "failed to file a motion to dismiss the case or for bail reduction after the State failed to have Defendant indicted within 45 days of arrest." But, for an indictment to be dismissed under Rule 48(b) for "unnecessary delay," the delay must be attributable to the State, and must have had a prejudicial effect on the Defendant.[66] The types of prejudice recognized by Rule 48(b) include:

> [T]he unexplained commencement of a new prosecution long after a dismissal by the State of the same charge in another court; the anxieties suffered by a defendant as the result of delay and uncertainty in duplicative prosecutions against him; the notoriety suffered by a defendant and his family as the result of repeated commencement of prosecutions for the same offense; and the expenses, legal and

---

[61] D.I. 5, Indictment.
[62] D.I. 34, p. 4.
[63] *Id.* p. 5.
[64] D.I. 40, p. 3.
[65] *Id.* Defendant has failed to articulate how his alleged postconviction claim prejudiced his defense.
[66] *State v. Moore*, 2024 WL 2292230, at *4 (Del. Super. May 21, 2024), *citing State v. Willis*, 2001 WL 789667 (Del. Super. April 24, 2001).

14

otherwise, attendant upon a subsequent renewal in another court of a dismissed prosecution.[67]

Defendant was arrested on August 31, 2023 and indicted on December 4, 2023, reflecting a 45-day indictment delay. Defendant has offered no evidence that the State engaged in egregious conduct which caused the delay, and he has not identified actual prejudice suffered due to the delay.[68]

Defendant contends counsel was ineffective because the "Court requested that counsel obtain medical records of Defendant to corroborate Defendant's claims of serious medical conditions."[69] Defendant further argues this Court agreed to "waive Defendant's bail if counsel obtained the records," and the Court would have reduced his bail, allowing him to be released back to the community pending trial.[70]

On January 18, 2024, counsel filed a Motion for Reduction of Bail.[71] Attached to the bail reduction motion was thirty-seven pages of Defendant's medical records. In the bail motion, counsel argued:

> Defendant has health issues that are better addressed and treated by his current physician, and which are exacerbated by prolonged incarceration: Defendant is currently suffering from liver disease and Alcohol Induced Polyneuropathy. (Please see attached medical records attached as Exhibit A).

---

[67] *Id.*, *quoting State v. Fischer*, 285 A.2d 417, 419 (Del. 1971).
[68] As to Defendant's related claim that counsel failed to file a Motion for Bail reduction, (D.I. 34, "Ground Four," p. 5-6) that claim is unsupported by the record. On January 18, 2024, counsel filed a Motion for Reduction of Bail. *See* D.I. 8.
[69] D.I. 34, p. 5
[70] *Id.* at p. 5-6.
[71] D.I. 8.

15

After considering the Motion (which included Defendant's medical records), the State's opposition to the Motion, and the DELPAT Pre-Trial Risk Assessment, this Court denied the Motion for Reduction of Bail.[72]  There is no evidence that any court expressly agreed to reduce Defendant's bail pending trial if he produced medical records indicating a compromised health condition, or that if he were released on bail, Defendant would have insisted on going to trial.

Under these circumstances, and considering all of Defendant's non-meritorious claims, I recommend Defendant's Motion for Postconviction Relief be summarily dismissed.

---

[72] D.I. 10.

## CONCLUSION

Defendant has failed to demonstrate he is entitled to the appointment of postconviction counsel, and all but one of his ineffective assistance of counsel claims were waived the moment he entered a knowing, intelligent and voluntary plea. As to the remaining claim, and specifically considering this Court's plea colloquy with Defendant, the record is devoid of any evidence that counsel coerced him into entering the Plea Agreement. Therefore, I recommend Defendant's Motion for the Appointment of Postconviction Counsel be **DENIED**, and Defendant's Motion for Postconviction Relief be **SUMMARILY DISMISSED**.

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
The Honorable Martin B. O'Connor

Cc:    Prothonotary
       Stephen McCloskey, Deputy Attorney General
       Raymond Armstrong, Esquire
       Darren Staats (SBI # 00467006)